1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **EASTERN DISTRICT OF WASHINGTON**

7 AIMEE RACQUEL MENDEZ, | No. 1:15-CV-3107-MKD

8 　　　　　　Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY

9 　　vs. | JUDGMENT AND DENYING DEFENDANT'S MOTION FOR

10 CAROLYN W. COLVIN, | SUMMARY JUDGMENT

11 Acting Commissioner of Social Security, | ECF Nos. 20, 22

12 　　　　　　Defendant.

13 　　　　BEFORE THE COURT are the parties' cross-motions for summary

14 judgment. ECF Nos. 20, 22. The parties consented to proceed before a magistrate

15 judge. ECF No. 7. The Court, having reviewed the administrative record and the

16 parties' briefing, is fully informed. For the reasons discussed below, the Court

17 grants Plaintiff's motion (ECF No. 20) and denies Defendant's motion (ECF No.

18 22).

19

20

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

1   the claimant's "residual functional capacity."  Residual functional capacity (RFC),

2   defined generally as the claimant's ability to perform physical and mental work

3   activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

4   404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

5   analysis.

6       At step four, the Commissioner considers whether, in view of the claimant's

7   RFC, the claimant is capable of performing work that he or she has performed in

8   the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

9   If the claimant is capable of performing past relevant work, the Commissioner

10  must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

11  If the claimant is incapable of performing such work, the analysis proceeds to step

12  five.

13      At step five, the Commissioner considers whether, in view of the claimant's

14  RFC, the claimant is capable of performing other work in the national economy.

15  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

16  the Commissioner must also consider vocational factors such as the claimant's age,

17  education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v);

18  416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

19  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

20  404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S DECISION

Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income on May 14, 2006, alleging onset beginning March 15, 2004.  Tr. 354, 102-110.  The applications were denied initially, Tr. 354, 66-72, and upon reconsideration, Tr. 354, 76-81.  Plaintiff appeared for a hearing before an administrative law judge (ALJ) on May 28, 2009.  Tr. 32-61.  At the hearing, Plaintiff requested a closed period of disability beginning March 15, 2004 and ending May 2, 2008, because she had returned to work.  Tr. 354.  ALJ Gaughen denied Plaintiff's applications on June 25, 2009.  Tr. 14-31.

The Appeals Council declined review and Plaintiff appealed.  Tr. 354.  The District Court found that the ALJ erred in his analysis of Plaintiff's physical impairments at step-three and with his analyses of impartial medical expert,

Anthony Francis, M.D., and treating physician, Michael Jach, M.D.  Tr. 455-466.

The Court remanded the case for further proceedings.  Tr. 469-470.

Upon remand, ALJ Valente held a hearing on February 10, 2015, where

Plaintiff and an impartial vocational expert testified.  Tr. 382-427.  At the hearing,

Plaintiff's attorney requested he be allowed to contact Dr. Francis, the impartial

medical expert at the 2009 hearing, to clarify parts of his testimony.  Tr. 355, 384.

ALJ Valente took this request under advisement, and subsequently denied

Plaintiff's request.  Tr. 355.  On April 24, 2015, ALJ Valente denied Plaintiff's

claim.  Tr. 354-367.

As a threshold matter, ALJ Valente found Plaintiff met the insured status

requirement through March 31, 2009.  Tr. 357.  At step one, ALJ Valente found

Plaintiff had not engaged in substantial gainful activity during the relevant period,

from March 2004 to May 2008.  Tr. 357.  At step two, the ALJ found Plaintiff had

the following severe impairments: right-knee degenerative joint disease, gastro-

esophageal reflux disease (GERD), and obesity.  *Id.*  At step three, the ALJ found

that Plaintiff did not have an impairment or combination of impairments that met

or medically equaled a listed impairment.  Tr. 358.  The ALJ then concluded that

the Plaintiff had the RFC to perform light work, with the following additional

limitations:

> The claimant could lift and carry twenty pounds occasionally and ten pounds
> frequently and could stand and walk for two hours at a time with usual and

customary breaks for five hours total out of an eight-hour workday. She could sit one hour at a time after which she needed to stand for a few minutes but not away from the workstation, and could work in the standing position, and then could resume sitting and continue this sit/stand activity for eight hours total in an eight-hour workday. The claimant could occasionally climb, stoop, kneel, and crouch, but could not crawl, and needed to avoid concentrated exposure to extreme cold.

Tr. 356-360.

At step four, the ALJ found Plaintiff could not perform any past relevant work. Tr. 365. At step-five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Plaintiff could have performed, such as storage-facility rental clerk and furniture rental consultant. Tr. 367. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act from March 15, 2004 through the date of the decision, April 24, 2015. Tr. 367.

The Appeals Council did not assume jurisdiction of the case, making ALJ Valente's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1484.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 20. Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly discredited Plaintiff's symptom claims;

2.  Whether the ALJ fulfilled the duty to develop the record; and

3.  Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 20 at 7.

## DISCUSSION

**A. Adverse Credibility Finding**

Plaintiff contends the ALJ failed to provide specific findings with clear and convincing reasons for discrediting her symptom claims.  ECF No. 20 at 7-12.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted).  "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony.").  "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter

alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

claimant's testimony or between her testimony and her conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

Plaintiff testified in 2009 that during the relevant period she was having pain

in her back, knees, and legs, at times causing her legs to go numb.  Tr. 47-49.

Throughout the day, she had to prop her legs up above her heart for 15 to 20

minutes.  Tr. 49.  She testified that she could not stand for more than two to three

hours in a day and did not believe she could work even a sedentary job.  Tr. 49-50.

At night, she testified that she woke to burning in her legs.  Tr. 49.

At the 2015 hearing, Plaintiff testified that during the relevant period, she

experienced severe problems with her right knee, including aching and swelling.

Tr. 385-386.  She testified that she could not walk for more than a few minutes

without limping and that "a couple times" she used a cane she borrowed from

someone else.  Tr. 386-87, 398-399.

This Court finds the ALJ provided specific, clear, and convincing reasons

for finding that Plaintiff's statements concerning the intensity, persistence, and

limiting effects of her symptoms "are not entirely credible."  Tr. 360.

### 1.    *Ability to Work without Medical Treatment*

The ALJ found that Plaintiff's ability to return to work despite not receiving

any significant treatment or improvement in her knee condition undermined her

allegations of severely limiting knee paid during the relevant period.  Tr. 361.  The

ALJ reviewed the medical record and noted there is no indication that Plaintiff's

knee condition changed significantly prior to her returning to work.  At the 2015

hearing, the vocational expert indicated that flagger work is generally performed at

the light exertional level, indicating that this work would require standing and/or

walking throughout much of the workday.  Tr. 361, 415.  Plaintiff acknowledged

she had no additional treatment for her knee since 2008 and only took Tylenol for her pain. Tr. 361. Plaintiff's subsequent ability to participate in light exertional work, despite no explanation of medical improvement undermined the credibility of her symptom claims during the relevant period. Plaintiff did not challenge this basis for the credibility finding, thus, the argument is waived. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009). This was a clear and convincing reason, supported by substantial evidence to discredit her symptom claims.

### 2. Minimal and Conservative Treatment Sought

The ALJ found the degree of limitation Plaintiff alleged to be inconsistent with the minimal treatment she sought for her knee. Tr. 361-362. The medical treatment a Plaintiff seeks to relieve her symptoms is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 416.929(c)(3)(iv), (v). "[I]n assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.' " *Molina*, 674 F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)).

The ALJ noted that despite the severe symptoms Plaintiff alleged began in 2004, she rarely complained of knee pain during appointments with her primary care provider during the relevant period. Tr. 361 (citing in a table Tr. 164, 166,

168, 175, 177, 179, 180, 182, 185, 231, 242, 244, 246, 249, 261, 283, 301, 303, 305).  The majority of the medical record, the ALJ observed, relates to medication refills.  Tr. 19 (citing, *e.g.*, Tr. 299-319, 354-367).  The ALJ found Plaintiff's minimal treatment inconsistent with her symptom claims and, therefore, undermined her credibility.  Tr. 361-362.

At the outset, Plaintiff faults the ALJ for failing to specify what claims were inconsistent with her treatment.  ECF No. 20 at 7-9.  A finding that a claimant's testimony is not credible "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (internal citations and quotations omitted).  Here, the ALJ indicated she found Plaintiff's symptom claims regarding her knee pain lacked credibility because of the minimal treatment she sought.  Tr. 361-362.  The ALJ's reasoning was sufficiently specific to allow this Court to review it.

Next, Plaintiff challenges the ALJ's finding because Plaintiff offered explanations for not seeking certain treatments and the ALJ failed to address or reject those explanations in the decision.  ECF No. 20 at 8-9.  Minimal treatment can undermine allegations of debilitating pain, but "such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not

seeking more aggressive treatment." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  For example, an ALJ may not reject a claimant's testimony because a lack of funds prevented her from seeking treatment.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999); *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).  Plaintiff testified that she did not seek treatment, like physical therapy, during this period because she could not afford it and her insurance did not cover it.  ECF No. 20 at 8-9 (citing Tr. 231, 249, 391); ECF No. 25 at 3.

The Commissioner attempts to undermine Plaintiff's contention by noting that she did not seek treatment for her knee even when she had insurance.  ECF No. 22 at 7 (citing Tr. 231, 252, 301, 303, 305, 316, 323, 337, 340, 347).  This Court "may not affirm an ALJ on a ground upon which [s]he did not rely."  *Orn*, 495 F.3d at 630.  Plaintiff counters that when she regained insurance coverage, surgery was ruled out because she was too young, and she could not receive an injection because of her fear of needles.  Tr. 49, 173.  The ALJ may well have had legitimate reasons to reject Plaintiff's explanations, but ALJ did not do so.  Here, the ALJ failed to consider or reject any of Plaintiff's explanations for failing to seek additional treatment.  *See Molina*, 674 F.3d at 1113 (ALJ may rely on failure to seek treatment or follow prescribed course of treatment when claimant's failure

is "unexplained or inadequately explained."). Accordingly, this Court finds ALJ Valente's reasoning is not clear and convincing. The error is harmless because the ALJ offered other legally sufficient reasons to discredit Plaintiff's symptom claims. *See Carmickle*, 533 F.3d at 1162.

### 3.    Inconsistent Daily Activities

The ALJ found that Plaintiff engaged in daily activities inconsistent with her allegations of severely limiting symptoms. Tr. 362. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn*, 495 F.3d at 639; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

1    Plaintiff testified that during the relevant period she cared for her child by

2    herself until she married in July 2005.  Tr. 395-396.  Before and after her marriage,

3    she testified that she performed her own housekeeping and cooking and drove

4    when her knee did not hurt.  Tr. 396.  Plaintiff reported caring for herself, shopping

5    independently, planning and preparing meals, and performing "a full range of

6    house cleaning and laundry."  Tr. 204.  For three to six months during the relevant

7    period, Plaintiff also reported attending Alcoholics Anonymous (AA) meetings

8    twice a week without an absence.  Tr. 401.  The ALJ also noted that Plaintiff was

9    involved in family court proceedings, which required her to attend court hearings,

10    treatment sessions, and supervised visits throughout 2006.  Tr. 362.  Plaintiff

11    testified she was able to comply with the various requirements and appointments

12    required.  Tr. 362.  The ALJ found Plaintiff's daily activities, in particular her

13    ability to care for a small child and attend court-ordered treatment and meetings

14    without an absence, were inconsistent with the severe limitations she alleged, such

15    as she would miss several days of work per month.  Tr. 362.

16    With respect to the AA meetings, Plaintiff contends her attendance at these

17    meetings twice a week is fully consistent with her testimony.  ECF No. 20 at 9-10.

18    Plaintiff urges this Court to consider the *level* of her activity in determining

19    whether her AA meetings were inconsistent with her testimony.  *Id.* (citing

20    *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity

were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").  Plaintiff's ability to meet these various treatment and court-ordered obligations without absence, in addition to her other daily activities, is inconsistent with her claims of disabling mobility issues, that she contended would require her to miss several days of work a month.

Plaintiff contends the ALJ failed to explain how any of her daily activities were transferable to a work setting or expressly contradicted her testimony.  ECF No. 20 at 9-10.  Here, the ALJ explained that her ability to complete all her activities of daily living, including her ability to care for a small child by herself, was inconsistent with the debilitating symptoms she alleged.  Tr. 362; *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (Plaintiff's ability to care for young children without help undermined claims of totally disabling pain).

While evidence of Plaintiff's daily activities may be interpreted more favorably to the Plaintiff, the evidence is susceptible to more than one rational interpretation, and therefore the ALJ's finding must be upheld.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### 4. *Lack of Objective Medical Evidence*

Initially, the ALJ set out, in detail, the medical evidence regarding Plaintiff's knee impairment, and ultimately concluded that "the minimal and mild physical

1   examinations and findings found throughout the record" do not support the

2   Plaintiff's claims of severely limiting pain.  Tr. 362.

3       An ALJ may not discredit a claimant's pain testimony and deny benefits

4   solely because the degree of pain alleged is not supported by objective medical

5   evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th

6   Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the

7   medical evidence is a relevant factor in determining the severity of a claimant's

8   pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§

9   404.1529(c)(2), 416.929(c)(2); *see also* S.S.R. 96-7p.[1]  Minimal objective

10  evidence is a factor which may be relied upon in discrediting a claimant's

11  testimony, although it may not be the only factor.  *See Burch*, 400 F.3d at 680.

12      While Plaintiff alleged debilitating knee pain, the ALJ observed that findings

13  from physical examinations were mild and the objective evidence supporting

14  Plaintiff's symptom claims minimal.  Tr. 362.  In October 2004, when Plaintiff

_____

16  [1] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new

17  ruling also provides that the consistency of a claimant's statements with objective

18  medical evidence and other evidence is a factor in evaluating a claimant's

19  symptoms. S.S.R. 16-3p at *6.  Nonetheless, S.S.R. 16-3p was not effective at the

20  time of the ALJ's decision and therefore does not apply in this case.

first complained of "intermittent right knee pain," treating physician Dr. Jach noted

that she exhibited "a little bit of discomfort," but normal range of motion, and he

detected no obvious swelling.  Tr. 185.  In 2006, Plaintiff was referred to

orthopedic specialist, Raymond Snyder, M.D.  Tr. 174-176.  Dr. Snyder found

Plaintiff exhibited normal range of motion and 110 degrees of comfortable knee

flexion, with mild swelling and crepitation.  Tr. 175.  Upon examining x-rays from

2004, Dr. Snyder found some degenerative changes, but "[o]verall, the

degenerative changes are not as extensive."  Tr. 176.  Dr. Snyder recommended

Plaintiff receive an MRI of her right knee and discussed the possibility for a

cortisone injection – an injection Plaintiff later refused because of her fear of

needles.  Tr. 176, 173.  Dr. Jach saw Plaintiff in April 2006 and found "no obvious

effusion or swelling."  Tr. 164.  While there was some tenderness along the medial

joint line of the right knee, Plaintiff exhibited normal range of motion.  Tr. 164.

Her Lachman's, anterior and posterior Drawer's, and McMurray testing were all

negative.  Tr. 164.  When Plaintiff saw Fady Sabry, M.D., in August and October

2007 for her GERD, Dr. Sabry noted that Plaintiff exhibited full range of motion,

normal strength, and her gait was stable.  Tr. 315, 322.  ALJ Valente noted that

during many other physical examinations, Plaintiff did not complain of any

problems with her knee and routinely appeared at said appointments in no acute

distress.  Tr. 363 (citing Tr. 242, 244, 246, 249, 261, 301, 308, 337).

The ALJ found the observations of normal gait and balance inconsistent with Plaintiff's allegations of severely limiting knee pain.  Tr. 363.  While Plaintiff alleged she could not walk for more than a few minutes without severe pain and developing a limp, her treating providers routinely observed her exhibiting stable and normal gait and balance on physical examination.  Tr. 363 (citing Tr. 279, 308, 316, 323).

Plaintiff contends there is no contradiction in the medical record because she testified that she only limps after walking for a few minutes and she never walked for more than a few minutes at appointments with her treatment providers.  ECF No. 20 at 11 (citing Tr. 399).  While the medical evidence may be interpreted more favorably to the Plaintiff, the evidence is susceptible to more than one rational interpretation, and therefore the ALJ's finding must be upheld.  *See Burch*, 400 F.3d at 679.

**B. Developing the Record**

Plaintiff contends the ALJ failed to fully develop the record when the ALJ refused to permit Plaintiff to seek clarification from Dr. Francis regarding his medical opinions.  ECF No. 20 at 17-20.

The gathering and presentation of medical evidence is critical to the fair and effective operation of the system for distributing social security benefits based on disability.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).  Although the

claimant bears the burden of demonstrating disability, *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987), the ALJ has a duty "to investigate the facts and develop the arguments both for and against granting benefits . . . ." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). This duty, known as the ALJ's duty to develop the record, requires ALJs to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) (quotations omitted).

"The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). An ALJ possesses broad latitude in discharging her duty. *Reed*, 270 F.3d at 842. However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

At the 2015 hearing, Plaintiff noted that the case was remanded for the ALJ to reconsider Dr. Francis' testimony. Tr. 384. Plaintiff's counsel explained to the ALJ that, at the prior hearing, Dr. Francis testified that Plaintiff equaled Listing 1.05 and would miss three days of work per month. Tr. 384. Plaintiff's counsel

1    requested he be "allowed to contact Dr. Francis, and get a clarifying statement

2    from him" and further requested that Dr. Francis be allowed to review the records

3    and transcript from the first hearing, if ALJ Valente questioned Dr. Francis'

4    testimony.  Tr. 384.  ALJ Valente took the request under advisement at the hearing.

5    Tr. 384.

6        In her decision, ALJ Valente rejected Plaintiff's request to recontact Dr.

7    Francis, and "determined clarification is not necessary.  Dr. Francis' testimony is

8    unequivocal about rest breaks and absences, and does not suffer from lack of

9    clarity but, rather, a lack of support as discussed below."  Tr. 355.  The ALJ then

10   discredited Dr. Francis' decision, contending that Dr. Francis's opinions contained

11   provisional statements, that the basis for the opinions were unclear, and the

12   opinions were unsupported.  Tr. 364-364.  For example, the ALJ stated:

13       Dr. Francis suggested the fact Dr. Snyder was willing to perform an
         injection on the claimant's knee indicated 'a certain level of severity' and
14       that he did not think it would be 'unreasonable to say she would have met or
         equaled [listing] 1.02A.  Dr. Francis does not further explain the basis for
15       this assertion, and never addressed the claimant's ability to ambulate
         effectively, which is the explicit basis for Listing 1.02A.
16
     Tr. 364.

17       In this matter, Dr. Francis' opinion was uncontradicted.  The District Court

18   has previously remanded this matter based in part on the ALJ's error in assessing

19   Dr. Francis' medical opinion.  On remand, Plaintiff requested the opportunity to

20   seek clarification from Dr. Francis regarding his opinion, if the ALJ questioned the

1    opinion.  After rejecting the request, the ALJ discredited the medical opinion based

2    on grounds that Plaintiff's counsel could have sought clarification on.  For

3    example, the ALJ found that Dr. Francis did not explain the basis for the assertion

4    that Plaintiff met listing 1.02A. and that Dr. Francis never addressed the claimant's

5    ability to ambulate.  Dr. Francis, who testified as an independent medical expert,

6    was not questioned about the basis for his opinion as to listing 1.02A and was not

7    questioned about Plaintiff's ability to ambulate as part of meeting or equaling the

8    listing.  The ALJ's refusal to supplement the record at Plaintiff's request, then

9    discrediting the medical opinion for lack of information that the medical expert

10   was not asked to provide was error.

11          Moreover, the error was compounded by the ALJ failing to comply with this

12   Court's previous order.  "The law of the case doctrine generally prohibits a court

13   from considering an issue that has already been decided by that same court or a

14   higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016)

15   (holding that law of the case applies to social security cases).  In the prior decision,

16   the Court found that "[a]though Dr. Francis used words like 'probably' and

17   'hypothetical,' the testimony establishes Dr. Francis' opinion that plaintiff would

18   likely have missed some work due to knee pain." Tr. 462.  The Court went onto to

19   explain that "the ALJ should have either offered legally sufficient reasons for

20   rejecting this limitation or included the limitation in the hypothetical." *Id.*  Here,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 23

1   the ALJ failed to comply with this instruction by finding, after the second hearing,

2   that "Dr. Francis never explicitly agreed it was reasonable to expect claimant

3   would have missed three or more days a month of work . . . ."  *Compare* Tr. 364

4   *with* Tr. 462 (finding that despite using words like "probably" and "hypothetical,"

5   the testimony established that Dr. Francis opined Plaintiff would likely have

6   missed some work due to knee pain.).

7        Given the procedural posture of this case and the failure to conform to the

8   Court's prior order, the Court finds that there was sufficient inadequacy in the

9   record to trigger the ALJ's duty to develop the record.  On remand, the ALJ should

10  permit Plaintiff to recontact Dr. Francis to provide any clarifying information

11  about his medical opinions.

12  **C. Medical Opinion Evidence**

13       Plaintiff faults the ALJ for discrediting the medical opinions of treating

14  physician Michael Jach, M.D.; reviewing physician Howard Platter, M.D.;

15  Katherine Smith; and reviewing physician Anthony Francis, M.D.  ECF No. 20 at

16  13-17.

17       There are three types of physicians: "(1) those who treat the claimant

18  (treating physicians); (2) those who examine but do not treat the claimant

19  (examining physicians); and (3) those who neither examine nor treat the claimant

20  but who review the claimant's file (nonexamining or reviewing physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a).

"Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources.  20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ need only provide "germane reasons" for disregarding an "other source" opinion.  *Molina*, 674 F.3d at 1111.

In this matter, the ALJ assigned little or no weight to all of the medical opinions provided.  None of the treating or reviewing physicians' opinions at issue were not contradicted.  Accordingly, the ALJ was required to offer clear and convincing reasons supported by substantial evidence to reject the medical opinions.  *Bayliss*, 427 F.3d at 1216.

Ms. Smith is not a physician and, therefore, ALJ Valente could reject her opinion by offering germane reasons.  *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

### 1.    *Dr. Jach*

Plaintiff contends the ALJ erred in rejecting the medical opinion of treating physician Dr. Jach.  ECF No. 20 at 13.

Dr. Jach opined that Plaintiff's right-knee pain caused a markedly severe impairment, meaning very significant interference in her ability to stand, walk, and lift.  Tr. 158, 162.  Because of her limitations, Dr. Jach opined that Plaintiff was, at most, capable of performing sedentary work.  Tr. 158, 162.  Dr. Jach first assessed these limitations in January 2006, and estimated that Plaintiff's limitations would

1   continue for four months.  Tr. 158.  Following up on that assessment in April 2006,

2   Dr. Jach extended his estimate an additional six months.  Tr. 163.

3       ALJ Valente afforded Dr. Jach's opinions only minimal weight.  Tr. 364.

4   ALJ Valente found the ten-months Dr. Jach's estimated Plaintiff's limitations to

5   persist undermined his opinion because it did not meet the durational requirements

6   for disability.  Tr. 365.  ALJ Valente also discounted Dr. Jach's opinion because he

7   did not formally diagnose Plaintiff, only noting that she had "chronic right knee

8   pain."  Tr. 365.  "Finally," ALJ Valente found Dr. Jach's limitations "inconsistent

9   with the claimant's minimal complaints of knee pain, her activities, her minimal

10  examination findings, and the conservative treatment she was provided."  Tr. 365.

11      Plaintiff contends portions of ALJ Valente's decision contradict this Court's

12  prior order.  ECF No. 20 at 15.  ALJ Gaughen previously discounted Dr. Jach's

13  opinion based on the ten-month estimate and because exam findings did not

14  support his opinion.  Tr. 23.  This Court rejected those reasons.  Tr. 463-466.

15      Significantly, Defendant does not present any argument defending the ALJ's

16  rejection of Dr. Jack's opinion; Defendant argues, that if the rejection was error, it

17  was harmless error.  ECF No. 22 at 12.

18      Based on Defendant's failure to present argument on this issue, the Court

19  finds that the ALJ could not reject Dr. Jach's opinion based on the ten-month

20  estimate or because exam findings did not support his opinion.  *See Stacy v.*

1  *Colvin*, 825 F.3d 563 (9th Cir. 2016).  The remaining reasons – the minimal

2  treatment Plaintiff sought, her activities – are the same reasons ALJ Valente relied

3  on to discount Plaintiff's symptom claims.  Tr. 365.  As discussed in the adverse

4  credibility section above, the Plaintiff's daily activities constitute a clear and

5  convincing reason for discrediting her.

6      Assuming without deciding that Plaintiff's daily activities are inconsistent

7  with Dr. Jach's assessment, the ALJ's reasoning is not clear and convincing.  An

8  ALJ may reject a contradicted treating physician's opinion if it is inconsistent with

9  a claimant's daily activities.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

10  595, 600–02 (9th Cir.1999) (considering an inconsistency between a treating

11  physician's opinion and a claimant's daily activities a specific and legitimate

12  reason to discount the treating physician's opinion).   Defendant has provided no

13  authority establishing that the reasons offered constitute clear and convincing

14  reasons for discrediting the uncontradicted opinions of treating physician Dr. Jach.

15  The Court finds the ALJ failed to offer clear and convincing reasons to accord Dr.

16  Jach's opinion less weight.

17      2.    *Dr. Platter and Ms. Smith*

18      Plaintiff contests the little weight ALJ Valente afforded Dr. Platter and Ms.

19  Smith's opinion.  EC No. 20 at 16.

20

Ms. Smith reviewed Plaintiff's medical record for the Social Security Administration. Tr. 220-227. Based on her review, she concluded Plaintiff ought to be limited to standing and walking two hours in an eight-hour workday. Tr. 221. Dr. Platter reviewed Plaintiff's medical file and Ms. Smith's assessment and reaffirmed this limitation. Tr. 228. These findings were largely consistent with treating physician Dr. Jach's assessment of limitation to sedentary work.

ALJ Valente afforded Dr. Platter's opinion little weight. Tr. 363. ALJ Valente found the limitation Dr. Platter assessed inconsistent with Plaintiff's "minimal complaints of knee pain, her activities, her minimal examination findings, and the conservative treatment she was provided." Tr. 363.

Plaintiff faults the ALJ for substituting her judgement for that of medical professionals like Dr. Platter. ECF No. 20 at 16. Moreover, Plaintiff contends Dr. Platter's opinion was consistent with the findings of Dr. Jach, findings this Court previously found were supported by his examination findings. ECF No. 20 at 16; Tr. 465-466. The ALJ's remaining reasons for rejecting Dr. Platter and Ms. Smith's opinion mirrored those offered for rejecting Dr. Jach's. While Ms. Smith's opinion can be rejected for a germane reason, Dr. Platter is a reviewing physician whose opinion is uncontradicted. Accordingly, the ALJ must offer clear and convincing reasons for rejecting his opinion. *Bayliss*, 427 F.3d at 1216. As with Dr. Jach, Defendant failed to challenge Plaintiff's argument and presents no

1    argument to the Court defending the ALJ's rejection of the medical opinions.  ECF

2    No. 22 at 12.

3           Defendant contends the ALJ's rejection of Dr. Jach and Dr. Platter's opinion

4    was harmless because, even if credited, their opinions would have established a

5    sedentary RFC.  ECF No. 22 at 12.  "An error is harmless where it is

6    inconsequential to the ultimate nondisability determination."  *Molina*, 674 F.3d

7    1115.  Under the Medical Vocational Guidelines, a person under age 45 with a

8    high school education and limited to sedentary work is not disabled.  ECF No. 22

9    at 13 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 201.28, 201.29).  But, as

10   Plaintiff notes, Plaintiff suffered additional, non-exertional limitations.  Tr. 360,

11   367.  In such circumstances, "a vocational expert is required to identify jobs that

12   match the abilities of the claimant, given her limitations."  *Johnson v. Shalala*, 60

13   F.3d 1428, 1432 (9th Cir. 1995).  Here, the vocational expert was not asked to and,

14   therefore, did not identify any sedentary jobs Plaintiff could perform with her

15   additional limitations.  Accordingly, the error is not harmless.

16       *3.   Dr. Francis*

17       Plaintiff contends the ALJ erred in discounting the opinion of medical expert,

18   Dr. Francis.  ECF No. 20 at 13.  For the reasons set forth *supra*, the Court finds

19   that the ALJ failed to articulate clear and convincing reasons for rejecting Dr.

20   Francis' opinions and erred by failing to supplement the record.

**CONCLUSION**

The ALJ's decision is not supported by substantial evidence or free of legal error.  Because further administrative proceedings are necessary, remand is appropriate.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1104-07 (9th Cir. 2014).  On remand, the ALJ should develop the record by permitting Plaintiff to recontact Dr. Francis so that his opinions are accurately represented, should reevaluate the medical opinion evidence, and the provide legally sufficient reasons for evaluating these opinions.  Finally, the ALJ must reconsider the step three findings, and if necessary, reevaluate the RFC and the entirety of the sequential process.

**IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment (ECF No. 20) is **GRANTED** and the matter is remanded to the Commissioner for additional proceedings pursuant to sentence four.  42 U.S.C. § 405(g).

2.     Defendant's Motion for Summary Judgment (ECF No. 22) is **DENIED**.

3.     An application for attorney's fee may be filed by separate motion.

1    The District Court Executive is directed to file this Order, enter Judgment

2  for Plaintiff, remand the case for further proceedings, provide copies to counsel,

3  and **CLOSE** the file.

4    DATED this Friday, September 02, 2016.

5                           _s/ Mary K. Dimke_
                         MARY K. DIMKE
6              UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20